Filed 3/4/25  P. v. Daniel CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B332203 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA263581) |
| v. | |
| KENNETH MARTIN DANIEL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2006, defendant and appellant Kenneth Martin Daniel was convicted of attempted murder (Pen. Code, §§ 664, 187, subd. (a))[1] and assault with a deadly weapon (§ 245, subd. (a)(1)). In 2023, while defendant was serving a 40-year-to-life sentence, the trial court resentenced him to 31 years to life pursuant to section 1172.75.[2]

On appeal, defendant argues that the trial court abused its discretion by failing to rule on his request to dismiss prior "strike" convictions under California's "Three Strikes" law (§ 667, subds. (b)-(i)). Finding no merit in this contention, we affirm.

**BACKGROUND**

I. *Facts*

"Shelida H. (Shelida) met defendant in February 2004 and became his girlfriend. Shelida learned she was pregnant in April 2004 and expressed to defendant her uncertainty about whether to keep the baby. At approximately 9:00 p.m. on April 12, 2004, defendant arrived at Shelida's home carrying a suitcase. Shelida was not happy that defendant appeared to have decided to move in with her. She allowed him to enter, but she displayed 'a little attitude' and went back to bed. When Shelida lay down on her bed, defendant hugged her and asked her how she was. Shelida brushed him off. Defendant asked her what was wrong, and Shelida replied, 'nothing,' and went to sleep.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    Effective June 30, 2022, section 1171.1 was renumbered section 1172.75, with no substantive changes. (Stats. 2022, ch. 58, § 12; *People v. Burgess* (2022) 86 Cal.App.5th 375, 378, fn. 2.) For simplicity, we refer to the section by its new numbering.

2

Defendant left the bedroom and later returned and tried to talk to her again. He sat on the bed and asked her what was wrong. Shelida said only that she was sleepy and did not want to talk. Shelida was later awakened by defendant straddling her on the bed. He was upset and angry and demanded to know why she would not talk to him. He stabbed her on the right side of her head and told her she was evil like his sister. He said Shelida would not get away with it and he was going to kill her. Shelida was groggy and at first thought defendant had hit her with his fist. She realized then that he was stabbing her, and defendant continued to stab her on the shoulder, collarbone, face, neck, chest and arm while saying he should kill her. He also said he should kill her anyway because he knew she was going to kill the baby.

"Shelida begged defendant not to kill her, and she promised to keep the baby. She gripped him tightly with her left hand, and eventually defendant stopped stabbing her. He said, 'Look what you made me do to you.'

"Shelida called 911 and was taken to a hospital and treated. Police found the knife defendant used in the kitchen sink. Police arrested defendant the following day at his friend's house. Defendant had told his friend that he believed he had "'hurt [Shelida] pretty bad.'" He later told a detective that he did not kill Shelida but he should have." (*People v. Daniel* (Nov. 28, 2007, B194003) [nonpub. opn.] (*Daniel*).)

II. *Procedural History*

    A. <u>Conviction</u>

In 2006, a jury found defendant guilty of attempted murder (§§ 187, subd. (a), 664; count 1) and assault with a deadly weapon by means likely to produce great bodily injury (§ 245, subd. (a)(1);

3

count 2). As to count 1, the jury found true the allegation that defendant used a deadly and dangerous weapon, a knife, to commit the offense. (§ 12022, subd. (b)(1).) As to both counts, the jury found true the allegation that defendant inflicted great bodily injury upon the victim in a circumstance involving domestic violence. (§ 12022.7, subd. (e).)

The trial court found that defendant had suffered five prior serious felony convictions (§ 667, subd. (a)(1)), five prior strike convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12), and five prior prison terms (former § 667.5, subd. (b)). The court sentenced defendant to serve 75 years to life in state prison.

B. <u>Direct appeal</u>

On direct appeal, we modified defendant's sentence on count 1 to 59 years to life and stayed the sentence on count 2 to 53 years to life. (*Daniel*, *supra*, B194003) We otherwise affirmed the judgment. (*Ibid*.)

C. <u>2018 resentencing</u>

In September 2018, the trial court resentenced defendant to serve 40 years to life.[3]

D. <u>Section 1172.6 petition; other motions for resentencing</u>

In July 2022, defendant filed a petition for resentencing under section 1172.6.[4] The trial court appointed counsel to

---

[3] Why defendant was resentenced in 2018 is not clear from the record before us. According to the September 24, 2018, minute order, it was prompted after the trial court "read and considered the Department of Corrections letter dated [August 30, 2018]."

[4] Section 1172.6 provides a procedural mechanism for defendants who could no longer be convicted of attempted murder

4

represent defendant in connection with his section 1172.6 petition.

Between November 2022 and January 2023, defendant filed several motions, in propria persona, seeking the benefit of other ameliorative sentencing laws, including resentencing under Senate Bill No. 1393 (2017-2018 Reg. Sess.)[5] and section 1172.75.[6]

On June 20, 2023, defendant's counsel filed a sentencing brief "invit[ing]" the trial court to "invalidate the five one-year prison prior enhancements, . . . exercise its discretion to strike and/or dismiss the 5 five-year serious felony conviction enhancements," and "conduct a full resentencing hearing[.]"

---

because of changes made to sections 188 and 189 in 2019 to petition for retroactive relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

[5] Senate Bill No. 1393, effective January 1, 2019, amended section 667, subdivision (a), and section 1385, subdivision (b), to give trial courts discretion to strike five-year serious felony enhancements. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.)

[6] Effective January 1, 2022, Senate Bill No. 483 (2021-2022 Reg. Sess.) added section 1172.75, which renders "legally invalid" any former section 667.5, subdivision (b) sentence enhancement imposed prior to January 1, 2020, "except for any enhancement imposed for a prior conviction for a sexually violent offense . . . ." (§ 1172.75, subd. (a).)

## E. Hearing and resentencing

At a hearing on June 21, 2023, the trial court denied defendant's section 1172.6 petition at the prima facie stage on the ground that he was not entitled to relief as a matter of law.[7]

The trial court proceeded to conduct a full resentencing under section 1172.75. The court indicated that it "was tentatively considering giving . . . defendant a mid term on the charge" and that the "issue [became] what to do about the other matters." The court noted that defendant was "a three-striker as well" and continued: "I used one of the unusual formulas to reach the sentence here. I didn't just go 25 to life. I did the sentence, and I added various numbers in, and it's one of the triads of the Three Strikes law that you're permitted to do, and that's what I did. [¶] And the reason I bring up the Three Strikes law . . . it's not clear that [section] 1385 or any of the new changes in the law penetrates the Three Strike sentencing regimen. In other words, that's an independent sentencing structure." Defendant's counsel asked the court, "given the circumstances, [to] strike one of the priors . . . and not consider it a Three Strike case."

The trial court then entertained a lengthy oral argument. The court commented that it thought that defendant "represents an endangerment to public safety." The court stated: "I think his history is just terrible. Anytime he's been out, he's committed violent crimes against people. I do not believe I'm supposed to ignore that fact. [¶] And when considering whether to strike strikes or not, you do not give credit when you consider

---

[7] Defendant's counsel conceded that section 1172.6 "wouldn't apply" to defendant because his attempted murder conviction was not based on the natural and probable consequences theory or the felony murder rule.

remoteness to the time that someone's in custody because you can't pick up any new strikes, you can't pick up any new crimes while you're in custody. And I don't think that's a real test of whether someone can act normal in society because they have armed people there. They have people watching you."

The trial court struck five one-year prior prison term enhancements (former § 667.5, subd. (b)) and four five-year serious felony enhancements (§ 667, subd. (a)).[8] Explaining that this was a "Three Strike sentence[,]" the court resentenced defendant to an aggregate term of 31 years to life. The sentence was comprised of 25 years to life on count 1, plus a five-year great bodily injury enhancement (§ 12022.7, subd. (e)) and a one-year personal use of a deadly or dangerous weapon enhancement (§ 12022, subd. (b)(1)). The court imposed and stayed, pursuant to section 654, a 25-year-to-life sentence on count 2.

F. Appeal

This timely appeal ensued.

## DISCUSSION

Defendant's sole argument on appeal is that the trial court failed to rule on his request to dismiss a prior strike conviction, which would have eliminated the Three Strikes status of the case.[9]

---

[8] The reporter's transcript of the hearing reflects some confusion whether defendant was subject to four or five section 667, subdivision (a) enhancements. The trial court concluded that defendant was only subject to four such enhancements and struck all of them.

[9] Defendant raises no challenge to the denial of his section 1172.6 petition, thus forfeiting any claim of error as to that ruling. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th

7

I. *Relevant Law*

Section 1172.75 renders "legally invalid" any former section 667.5, subdivision (b) prior prison term enhancement imposed prior to January 1, 2020, except for a prior conviction for a sexually violent offense. (§ 1172.75, subd. (a).) A defendant who qualifies for the recall of his sentence under section 1172.75 is entitled to "a full resentencing" at which the trial court may reconsider all of its prior sentencing decisions. (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402 (*Monroe*).)

When conducting a full resentencing under section 1172.75, a trial court has the authority under section 1385, subdivision (a), and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to strike prior convictions that qualify as strikes under the Three Strikes law. (*People v. Rogers* (2025) 108 Cal.App.5th 340, 345 (*Rogers*).) In determining whether to take such action, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"[T]he [T]hree [S]trikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong

92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)

presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)

II. *Standard of Review*

We review a trial court's decision to dismiss or strike a strike prior for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 374; see also *People v. Garcia* (2024) 101 Cal.App.5th 848, 856–857 [same, as to a resentencing court's decision not to reduce a defendant's sentence under section 1172.75].)

III. *Analysis*

As required by section 1172.75, the trial court struck all five of defendant's former section 667.5, subdivision (b) prior prison term enhancements. And, as required, the court conducted a full resentencing (*Rogers*, *supra*, 108 Cal.App.5th at p. 361; *Monroe*, *supra*, 85 Cal.App.5th at p. 402), during which it exercised its discretion to strike all of defendant's five-year serious felony enhancements (§ 667, subd. (a)). Although the "court had the authority to exercise its discretion under section 1385[, subdivision] (a) and *Romero* to strike any or all of [defendant]'s strike priors" (*Rogers*, at p. 364), it declined to do so and resentenced defendant pursuant to the Three Strikes law.

Defendant contends that "[t]he [trial] court never specifically ruled on [defendant]'s request to dismiss the prior strike convictions" and that a "failure to exercise . . . properly

9

authorized discretion is itself an abuse of discretion." The premise of this argument is fundamentally flawed because the court *did* rule on defendant's request to dismiss the strike priors. After entertaining extensive oral argument from the parties, the court expressly ruled that it would exercise its discretion to strike all of the serious felony enhancements (§ 667, subd. (a)), "[b]ut the sentence w[ould] remain 31 years to life" because "[i]t's a Three Strike sentence."

The rationale for the trial court's decision not to strike the strike priors was clearly articulated during the hearing. The court considered defendant to be "an endangerment to public safety" with a "terrible" criminal history; "[a]nytime" defendant was out of prison, he "committed violent crimes against people." The court was unmoved by any suggestion that the strikes were remote in time because defendant had been in custody for those years, where he was "watch[ed]" by "armed people."

The trial court's statements indicate that it reasonably viewed defendant as "'an exemplar of the "revolving door" career criminal to whom the Three Strikes law is addressed.' [Citation.] As such, the court's decision not to strike [defendant]'s priors is neither irrational nor arbitrary and does not constitute an abuse of its discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 379.) Where, as here, "the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law" (*People v. Myers* (1999) 69 Cal.App.4th 305, 310), we must affirm its ruling.

## DISPOSITION

The trial court's June 21, 2023, order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ